# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

**CHRISTINIA DYKES,**

    Plaintiff,

v.                                      Case No. 2:21-cv-626-JES-NPM

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Christinia Dykes seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the proceedings (Doc. 12), [1] and the parties filed a joint memorandum (Doc. 18). As discussed in this report, the decision of the Commissioner should be affirmed.

## I. Eligibility for Benefits and the Administration's Decision

### A. Eligibility

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death

---

[1] Cited as "Tr." followed by the corresponding page number.

or that have lasted or can be expected to last for a continuous period of not less than twelve months.[2] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, nonexertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

### B. Factual and procedural history

Dykes applied for disability-insurance benefits on October 27, 2017. (Tr. 120, 333). She asserted an onset date of June 1, 2015, alleging disability due to the following: fibromyalgia; endocrine disorder; granulomatous lungs; major depressive disorder; heart rhythm irregularities; and joint pain. (Tr. 105-106). As of the alleged

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. §§ 404.1505, 416.905.

[3] *See* 20 C.F.R. §§ 404.1513(a)(2)(i)-(iv) (discussing the various categories of work-related abilities), 416.913(a)(2)(i)(A)-(D) (same), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 416.922(b) (same), 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by an impairment), 416.945(b)-(d) (same), 404.1594(b)(4) (defining functional capacity to do basic work activities), 416.994(b)(1)(iv) (same).

[4] *See* 20 C.F.R. §§ 404.1511, 416.911(a).

onset date, Dykes was 43 years old with some college education. (Tr. 105, 377). She previously worked as an office manager, welfare eligibility worker, and collection clerk. (Tr. 44, 89, 97).

On behalf of the administration, a state agency[5] reviewed and denied Dykes's application initially on December 4, 2017, and upon reconsideration on February 15, 2018. (Tr. 120, 135, 167, 172). At Dykes's request, Administrative Law Judge (ALJ) Ryan Johannes held a hearing on March 21, 2019 (Tr. 61-93), and on May 16, 2019, the ALJ issued a decision finding Dykes not disabled. (Tr. 136-151). However, on April 3, 2020, the Appeals Council remanded the case back to the ALJ for a new hearing. (Tr. 158-160).

The ALJ held a post-remand hearing on October 8, 2020 (Tr. 38-60), and on February 4, 2021, the ALJ held a supplemental hearing. (Tr. 94-104). On February 22, 2021, the ALJ issued another decision finding Dykes not disabled. (Tr. 7-24). Dykes's timely request for review by the administration's Appeals Council was denied on July 7, 2021. (Tr. 1-6). Dykes then brought the matter to this court, and the case is ripe for judicial review.

---

[5] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a); 20 C.F.R. § 404.1503(a).

## C. The ALJ's decision

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform [her] past relevant work; and (5) if not, whether, in light of [her] age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. § 404.1520(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 404.900(b). Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and

conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there are enough jobs the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See* 20 C.F.R. § 404.1512 (providing that the claimant must prove disability); *see also Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) ("The scheme of the Act places a very heavy initial burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work."). In short, the "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

At step one of the evaluation, the ALJ found Dykes had not engaged in substantial gainful activity since the alleged onset date. (Tr. 14). At step two, the ALJ characterized Dykes's severe impairments as supraventricular tachycardia; left knee degenerative joint disease; left adrenal adenoma; and bipolar disorder. *Id.* At step three, the ALJ determined Dykes did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. *Id*.

As a predicate to step four, the ALJ arrived at the following RFC:

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except occasional climbing stairs and ramps; never climbing ladders and scaffolds; frequent balancing or stooping; never kneeling, crouching or crawling; must avoid concentrated exposure to vibration; must avoid all exposure to moving mechanical parts and unprotected heights; the claimant can understand, remember, and carryout out simple repetitive, reasoning level 1-2 tasks; with only occasional interaction with the general public, coworkers and supervisors; in a routine work setting that has only occasional changes in the work routine.

(Tr. 17).

Consequently, the ALJ determined Dykes was unable to perform her past relevant work. (Tr. 22). At step five, the ALJ found Dykes could perform other work that exists in significant numbers in the national economy. (Tr. 22-23). In support, a vocational expert testified three occupations represent the kinds of jobs an individual with Dykes's age, education, work experience, and RFC can perform:

- assembler, small products (DOT #706.684-022); SVP 2; light; 32,000 jobs in the national economy;
- labeler (DOT #920.687-126); SVP 2; light; 30,000 jobs in the national economy; and
- inspector and packer (DOT #559.687-074); SVP 2; light; 21,000 jobs in the national economy.

(Tr. 23).[6]

---

[6] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill

Thus, the ALJ concluded that for purposes of the Act, Dykes was not disabled from June 1, 2015, the alleged onset date, through December 31, 2018, the date last insured. (Tr. 23).

## II.   Analysis

Dykes's appeal presents the following issues for review:

1. Whether remand is required because, while this case was adjudicated by the administration, the statute governing the removal of the Commissioner violated the separation of powers;

2. Whether the ALJ was required to mirror findings in a consultative psychologist's opinion that the ALJ found persuasive; and

3. Whether the ALJ's step-five conclusion is supported by substantial evidence.

### A.   Standard of review

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d

---

categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

### B. There was no separation-of-powers violation warranting remand

Dykes argues the administration's structure violates the separation of powers due to the statutory provision governing the President's authority to remove the Commissioner. (Doc. 18, pp. 37-41) (citing 42 U.S.C. § 902(a)(3)). And to the extent it is construed as limiting the President's authority to remove the Commissioner

without cause, the Commissioner agrees that the removal provision is unconstitutional. (Doc. 18, p. 41).

But Dykes's claim was adjudicated by an ALJ whose tenure was ratified by former Acting Commissioner Saul, an officer removable at will and not subject to 42 U.S.C. § 902(a)(3)'s tenure protection. "Although the statute unconstitutionally limited the President's authority to remove the confirmed [Commissioner], there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the [administration] as void." *Collins v. Yellen*, 141 S. Ct. 1761, 1787 (2021); *see also id*. at 1802 (Kagan, J. concurring) ("I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone .... When an agency decision would not capture a President's attention, his removal authority could not make a difference.").

There is no indication the President attempted or desired the removal of the Commissioner while this case was pending before the administration. And Dykes has neither shown a nexus between the removal restrictions and her claim, nor has she plausibly alleged that the statutory tenure protection affected the ALJ's decision or caused her harm. For these reasons, this court, like its sister courts throughout the country, has repeatedly held this separation-of-powers argument meritless, and it should do so again here. *See Tibbetts v. Comm'r of Soc. Sec.*, No. 2:20-cv-872-SPC-

MRM, 2021 WL 6297530 (M.D. Fla. Dec. 21, 2021) (report and recommendation), *no objection and adopted*, 2022 WL 61217 (Jan. 6, 2022); *see also Hultgren v. Comm'r of Soc. Sec.*, No. 2:20-cv-892-SPC-NPM, 2022 WL 1085547 (M.D. Fla. Feb. 9, 2022) (report and recommendation), *overruling objections and adopted*, 2022 WL 736176 (Mar. 11, 2022); *Frank v. Comm'r of Soc. Sec.*, No. 2:20-cv-962-SPC-NPM, 2022 WL 598036 (M.D. Fla. Feb. 10, 2022) (report and recommendation), *no objection and adopted*, 2022 WL 596833 (Feb. 25, 2022).

### C. The ALJ was not required to mirror a consultative psychologist's persuasive opinion

Consultative psychologist Paula Bowman examined Dykes on April 8, 2019. (Tr. 2009). And as the ALJ observed when finding the psychologist's opinion persuasive, Bowman found Dykes had "moderate limitations in interacting appropriately with the public, supervisors, and coworkers; and responding appropriately to usual work situations and to changes in a routine work setting." (Tr. 21). Citing outdated regulations and case law, Dykes takes issue with the ALJ not parroting this aspect of Bowman's opinion when finding at steps 2 and 3 of the sequential evaluation that Dykes had no more than mild limitations in the corresponding domains of mental functioning.[7]

---

[7] On appeal, Dykes offers seemingly immaterial conjecture about some differences in Bowman's hand-written notes and type-written report and asserts that the ALJ committed reversible error by not discussing the differences between the two. But as the governing regulations state: "We are not required to articulate how we considered each medical opinion … from one medical source individually." 20 C.F.R. § 404.1520c(b)(1). Instead, when a medical source provides multiple

But finding an opinion persuasive does not mean it is controlling. 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."). And the regulations do not require ALJs to adopt every part of an opinion that they otherwise find persuasive. *See Sesler v. Comm'r of Soc. Sec.*, No. 8:20-cv-2835-DNF, 2021 WL 5881678, *6 (M.D. Fla. Dec. 13, 2021); *Misla v. Comm'r of Soc. Sec.*, No. 6:20-cv-1076-DCI, 2021 WL 2417084, *2 (M.D. Fla. June 14, 2021); *Freyhagen v. Comm'r of Soc. Sec.*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, *8 (M.D. Fla. Sept. 26, 2019). Moreover, the assessment of a claimant's functional capacity is within the **exclusive province** of the ALJ. *See* 20 C.F.R. § 404.1520c(a); *accord Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's [RFC] is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive").

Besides, the RFC incorporates limitations consistent with Bowman's opinion. Bowman found moderate—that is, something more than slight, but less than serious—limitations in Dykes's abilities to consistently and appropriately interact with others and respond to situations and changes in a work setting. And the RFC

---

medical opinions, the administration will articulate how it "considered the medical opinions … from that medical source together in a single analysis …." *Id*.

limited Dykes to performing simple tasks in a routine and safe setting involving only occasional changes in routine and only occasional interaction with others. There is no argument that the RFC is not consistent with the record taken as a whole, and so even if there were any error in the ALJ's step 2 and 3 analysis, it was harmless.

### D. The vocational expert's testimony constituted substantial evidence

While the claimant always bears the burden of proving that she is incapable of performing any substantial gainful activity, the administration has the initial burden at step five of the sequential analysis to show that there are a significant number of jobs that can be performed by someone with the claimant's age, education, work experience, and RFC. To satisfy this burden, the administration routinely relies on the opinions of vocational experts who testify during the ALJ hearings.

A vocational expert "is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). And because an ALJ may rely upon a vocational expert's knowledge or expertise, *Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 839 (11th Cir. 2012), we are only concerned with whether the vocational expert's testimony constitutes substantial evidence and not whether substantial evidence supports the vocational expert's testimony. *See Pace v. Comm'r of Soc. Sec.*, 760 F. App'x 779, 781 (11th Cir. 2019).

The Social Security regulations "do not require a [vocational expert] to produce detailed reports or statistics in support of her testimony." *Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 839 (11th Cir. 2012); *see also Curcio v. Comm'r of Soc. Sec.*, 386 F. App'x 924, 926 (11th Cir. 2010) (same). And a vocational expert's number-of-jobs testimony "may count as substantial evidence even when unaccompanied by supporting data." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1155 (2019).

The regulations do not require any degree of precision, and the available data in this area is imperfect. Further, the traditional rules of evidence do not apply, and opinion testimony in this kind of proceeding is not subject to litigation-like scrutiny. But a vocational expert's testimony will fail to supply substantial evidence in support of an ALJ's unfavorable step-five finding if the claimant demonstrates at the hearing that the expert's methodology contains several significant mistakes and thereby lacks a "baseline of reliability." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1285 (11th Cir. 2020).

The vocational expert in this case had two degrees in rehabilitation counseling, including a master's degree, and decades of work in the field of vocational rehabilitation as a counselor and vocational specialist. (Tr. 551). Based on his expertise, the vocational expert opined during the hearing that that there were a significant number of jobs in the economy that could be performed by someone of

Dykes's age, education, work experience, and RFC. (Tr. 97-98). As representative examples, he pointed to the occupations of inspector/packer, small products assembler, and labeler, and provided estimated job numbers for each. (Tr. 98).

Represented by counsel at the hearing, Dykes did not object to the expert's qualifications, did not ask the expert to produce any supporting data, and did not present any evidence in rebuttal. (Tr. 77-79). Rather, Dykes's counsel merely confirmed that the expert drew the estimated job numbers from SkillTRAN's Job Browser Pro software, and that the expert did not have a great deal of familiarity with the methodology underlying the software. (Tr. 101). From that, Dykes argues the vocational expert's testimony cannot constitute substantial evidence in support of the ALJ's step-five finding.

But this argument misses the mark. A "[vocational expert's] recognized expertise provides the necessary foundation for his or her testimony. [N]o additional foundation is required." *Leonard v. Comm'r of Soc. Sec.*, 409 F. App'x 298, 301 (11th Cir. 2011). And based on his education and experience, the vocational expert vouched for the software as a reliable instrument in the field and ratified its estimated job numbers. (Tr. 102-103). Indeed, the Eleventh Circuit recently credited this software as one of various instruments that vocational experts may use in conjunction with their knowledge and expertise. *Goode*, 966 F.3d at 1284. Thus, the

unrebutted opinion testimony supplied substantial evidence in support of the ALJ's step-five finding.

## III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, substantial evidence supports the ALJ's decision and there was either no error or no harmful error in the ALJ's application of the correct legal standard. Accordingly, the decision of the Commissioner should be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the Clerk of Court should be directed to enter judgment, terminate any pending motions and deadlines, and close the case.

Respectfully recommended on August 1, 2022.

*/s/ Nicholas P. Mizell*
NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 11th Cir. R. 3-1. **To expedite resolution, parties may file a joint notice waiving the 14-day objection period.**